**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CR. NO.   2:07-cr-104-WKW** |
| | ) | |
| **NORMAN EVANS MCELROY, JR.** | ) | |
| | ) | |

---

### United States's Response to Defendant's Motion to Suppress

---

Norman Evans McElroy's Motion to Suppress should be denied.  His motion is vague and is inconsistent with the Court's requirements for motions to suppress.  Furthermore, his conclusory allegations are without merit.

FBI agents properly went to McElroy's residence to question him about the Shannon Paulk murder and about allegations of distribution of child pornography.  Even if they were not investigating the Paulk case–which they were– they had no duty of candor to McElroy.  Moreover, the computer in this case belonged to McElroy's girlfriend, Stephanie Takenhorst.  Not only did agents obtain Takenhorst's consent prior to searching the computer, but they also obtained McElroy's consent to view and examine the computer.  McElroy's own post-indictment statements confirm this.  Finally, McElroy's confessions in this case were completely voluntary and not a product of coercion. McElroy's motion should therefore be denied.

**1.    McElroy's Motion Fails to Follow the Requirements of the Court's May 30, 2007 Pretrial Order.**

McElroy has filed a vague and conclusory motion to suppress.  This is not sufficient for

motions to suppress in this District.  As the Court's May 30, 2007 Pretrial Order in this case noted:

> Motions to suppress must allege specific facts which, if proven, would provide a basis of relief. This court will summarily dismiss suppression motions which are supported only by general or conclusory assertions founded on mere suspicion or conjecture. All grounds upon which the defendant relies must be specifically stated in the motion in separately numbered paragraphs in a section of the motion which is labeled "Issues Presented." Grounds not stated in the "Issues Presented" section of the motion will be deemed to have been waived. See generally United States v. Richardson, 764 F.2d 1514,1526-27 (11th Cir. 1985).[1]

Without more specific allegations and legal citations to support the Motion, it is difficult for the Government to formulate a response to this motion.  Therefore, McElroy's Motion should be denied.  After all, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose . . . submission to their lawful mandates."[2] These powers permit "courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."[3]

### 2.    McElroy's Confessions Were Permissibly Obtained Because He Was Not in Custody.

The Government does not dispute that *Miranda* warnings were not given and that McElroy's statements were made in response to interrogation.  The *Miranda* rule, however,

---

[1] *See* Doc. # 16. (emphasis removed).

[2] *Anderson v. Dunn,* 6 Wheat. 204, 227 (1821); *see also Ex parte Robinson*, 19 Wall. 505, 510 (1874).

[3] *Link v. Wabash R. Co.,* 370 U.S. 626, 630-631, (1962); *see also Eash v. Riggins Trucking Inc.,* 757 F.2d 557, 567 (3d Cir. 1985) ("A court's inherent power to manage its caseload, control its docket, and regulate the conduct of attorneys before it, provides authority to fashion tools that aid the court in getting on with the business of deciding cases.").

applies only to statements made during *custodial* interrogation.  As a result, McElroy cannot sustain his burden of demonstrating that he was in custody.[4]

A person is in custody when "under the totality of the circumstances, a reasonable [person] in the suspect's position would feel a restraint on [her] freedom of movement . . . to such extent that [she] would not feel free to leave."[5]  In general, questions of custody turn on whether restrictions on the suspect's freedom of movement are "of the degree associated with formal arrest."[6]

Here, McElroy's first statement was given at his house outside in his driveway; the second statement was given several days later in a conference room at the FBI's office's. McElroy voluntarily came to the FBI's office during his lunch break, sat in a chair next to the door and near the exit, was shown where the exit and restroom were located, and offered water to drink.[7]  Moreover, it is illustrative to consider the following:

- McElroy was not physically moved or restrained by agents at any time;[8]
- No handcuffs were employed, and no guns were drawn;[9]

---

[4] *See People v. Charles*, 738 F.2d 686, 691-92 (5th Cir. 1984) ("[D]efendants' burden required that at a minimum they demonstrate that the . . . statements were obtained while they were under custodial interrogation.").

[5] *United States v. Phillips*, 812 F.2d 1355, 1360 (11th Cir. 1987) (citations omitted).

[6] *Minnesota v. Murphy*, 465 U.S. 420, 430 (1984).

[7] *See Phillips*, 812 F.2d at 1360 (interview was non-custodial even though it took place in police station and defendant was not expressly told that he was free to leave).

[8] *Cf. Jacobs v. Singletary*, 952 F.2d 1282, 1291 (11th Cir. 1992) (person was in custody when grabbed and restrained by officer).

[9] *Cf. United States v. Blackman*, 66 F.3d 1572, 1576-77 & n. 4 (11th Cir. 1995) (even when handcuffed and held at gunpoint, suspect was not under arrest).

- McElroy was not booked or told of formal accusations, nor told that he was under arrest;[10]
- There is no indication that McElroy was not free to leave; and[11]
- McElroy in fact was permitted to leave.[12]

In fact, McElroy provides no information to suggest that he was in custody. To the best of the Untied States's ability, the only proffered reason that McElroy provides to suppress his statements is that the agents falsely told him that they were investigating the murder of Shannon Paulk in addition to their child pornography investigation. This, however, not was false and was not deceptive. The agents were there to question McElroy about the murder. McElroy was a suspect based upon his prior residences and a composite photo that the FBI had obtained. Moreover, even if this were a ruse–which it was not–it was still legally permissible.[13]  McElroy's motion should be denied.

_____

[10] *See Phillips,* 812 F.2d at 1362 (suspect not in custody because "he was never placed under arrest or told that he was under arrest").

[11] *See id.* (relying on fact suspect never requested to terminate the interview).

[12] *Muegge*, 225 F.3d 1267.

[13] *See, e.g.*, *id.* (holding that no Fourth Amendment violation in an undercover agent gaining entry into defendant's home by misrepresenting himself as a drug buyer and actually making a controlled purchase of drugs); *United States v. Garcia,* 997 F.2d 1273 (9th Cir. 1993) (noting that undercover officers' action in talking to defendant and his companion through screen door while they pretended to be potential renters did not render their sighting of defendant holding package of cocaine a warrantless search); *United States v. Scherer,* 673 F.2d 176 (7th Cir. 1982) (concluding that government agents who misrepresented their identities to gain entry to defendant's premises were aware before the visit that two submachine guns were lying in defendant's barn did not take the case out of consent exception to Fourth Amendment's warrant requirement); *United States v. Raines,* 536 F.2d 796 (8th Cir. 1976) (holding that undercover agent's entry into defendant's residence at defendant's invitation, though obtained by agent's misrepresentation that he was friend of defendant's drug associate); *United States v. Bullock,* 590 F.2d 117 (5th Cir. 1979) (finding that mere fact that undercover agent concealed his true identity did not nullify defendant's waiver of Fourth Amendment rights); *United States v. Guidry,* 534 F.2d 1220 (6th Cir. 1976) (holding that government agent's initial entry into residence under the pretense of being a "helper" to third party asked by defendants to aid in the sale of portion of their printing press was legitimate police activity); *United States v. Ressler,* 536 F.2d 208 (7th Cir. 1976) (holding that agents, while not revealing their identity and true purpose in entering defendants' residence and dealing in firearms with them, did not make an illegal search); *United States v. Miglietta,* 507 F. Supp. 353 (M.D. Fla. 1980) (finding that

### 3.    McElroy Gave his Consent to Search.

Finally, McElroy and his then-fiancé, Stephanie Takenhorst, gave consent to search; this portion of his motion is meritless.  The agents in this case arrived at McElroy's house and asked both McElroy and Takenhorst if they could search the computer and do analysis on it.  Both signed a consent form. It is black letter law that  "[a] warrantless search undertaken without probable cause is valid if conducted pursuant to consent."[14]

Furthermore, the United States has obtained evidence that strongly suggests that McElroy lied to his attorney in order to induce her to file this frivolous motion.  In an April 16, 2007 recorded phone conversation between McElroy and Takenhorst–obtained via a subpoena from the Montgomery City Jail–is as follows:

Takenhorst:   The only thing is, that you voluntarily gave [the computer] up.

McElroy:   Don't tell that attorney that, because I didn't tell her that.

Takenhorst:   O.k.

McElroy:   I told her they pulled me outside– two agents pulled me outside– and that three or four agents . . . went in our home, .and started going through my computer.

Takenhorst:   And they did. I signed a paper, saying that it was o.k. for them to do that.  She probably has . . . that.

McElroy:   Did you sign the paper before they started or after they

---

fact that government agents disguised as delivery personnel accompanied legitimate parcel service driver and entered defendant's business premises to deliver actual parcel without search warrant and prior to issuance of contested search warrant did not render subsequent warranted search unlawful).

[14]*United States v. Butler*, 102 F.3d 1191, 1197 (11th Cir. 1997).

started?

Takenhorst:  Before.

McElroy:      Well . . . .

Therefore, because his motion is without merit, it should be denied.

**4.      Conclusion**

McElroy's Motion should be denied.  Not only is his motion legally untenable, but also its vague and conclusory nature smacks of a fishing expedition.  The motion should denied.

Respectfully submitted this 12th day of February, 2008,

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Christopher Snyder
CHRISTOPHER A. SNYDER
Assistant United States Attorney

131 Clayton Street
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
E-mail:  christopher.a.snyder@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 12, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Christine Freeman.

/s/ Christopher Snyder
CHRISTOPHER A. SNYDER
Assistant United States Attorney