**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No.: 2:07-cr-104-WKW |
| ) | |
| NORMAN MCELROY ) | |

**DEFENDANT'S OBJECTIONS TO THE RECOMMENDATION OF THE
MAGISTRATE JUDGE REGARDING DEFENDANT'S MOTION TO SUPPRESS**

The Defendant, Norman McElroy, by counsel, objects to the Recommendation of the Magistrate Judge (Doc. 53) that the Defendant's Motion to Suppress (Doc. 26) be denied. The Recommendation misapplies the law of voluntary consent analysis to the evidence in Mr. McElroy's case. The specific factors the Recommendation incorrectly analyzed include: (1) the use of coercive police procedures in obtaining consent; (2) Mr. McElroy's lack of awareness of his right to refuse consent; (3) Mr. McElroy's belief that incriminating evidence would be found in a search if he did consent; and (4) the scope of the consent given..

**I.    Coercive Police Procedures Vitiate Apparent Consent**

On March 30, 2007, five agents conducted a warrantless search and seizure of Mr. McElroy's computer inside Mr. McElroy's residence and interrogation of Mr. McElroy. The agents obtained entry and consent to these intrusions by describing the purpose of their visit as the investigation of the S.P. case.[1] As a result, the agents obtained apparent consent from

---

[1] The S.P. case is the abduction and murder of a young female child from a trailer park in Prattville, Alabama on August 16, 2001. The investigation of this crime was highly publicized throughout Alabama, including billboards with composite drawings of a possible suspect, and

1

Mr. McElroy and his fiancé to search computers in their home and obtained multiple admissions by Mr. McElroy regarding possession of child pornography.[2] Based on the information obtained through these allegedly consensual encounters, the FBI later obtained a search warrant for further examination of the computers. Mr. McElroy seeks to suppress each and all of this incriminating evidence, both as obtained in violation of his Fourth Amendment rights and as a fruit of earlier Fourth Amendment violations.

The Recommendation did not directly address this issue, but made a factual finding in a footnote that the agents believed in good faith that Mr. McElroy could have been involved in the S.P. case. *See* Recommendation, p. 6 at n. 1. This fact finding was not supported by the evidence at the suppression hearing or other evidence.[3]

In addition, the Recommendation fails to address the significant role of this issue in vitiating the alleged voluntariness of Mr. McElroy's consents to the entry of his home, the searches of his computer(s), and interrogation by police.

Both the 11th Circuit and the U.S. Supreme Court have made it clear that home intrusions by the government are to be examined carefully due to Fourth Amendment

---

remains unsolved. The Prattville Police Department, as well as numerous other organizations, maintain websites with current information on this investigation. See the link with the child's name, included at http://www.prattville.com/Default.asp?ID=22&pg=Police+Department.

[2] Mr. McElroy was interviewed by FBI agents at his home on March 30, 2007, at the FBI office on April 10, 2007, and made a statement after his arrest.

[3] Following the suppression hearing, defense counsel obtained an affidavit (attached) from Mr. McElroy's former girlfriend, stating that on March 29, 2007, before the agents approached Mr. McElroy, she had specifically told the FBI agents that the composite photograph of the S.P. case suspect did <u>not</u> look like Mr. McElroy. See Exhibit A, attached.

2

concerns:

> Since physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed, it is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.[4]

It is nonetheless recognized that such warrantless searches may be constitutional when conducted pursuant to voluntary consent.[5] The 11th Circuit requires that courts assess voluntariness by examining the facts of each individual case and by giving special consideration to several factors, including the following:

> the presence of coercive police procedures, the extent of the defendant's cooperation with the officer, the defendant's awareness of his right to refuse consent, the defendant's education and intelligence, and the defendant's belief that no incriminating evidence will be found.[6]

"(T)he absence of official coercion is a *sine qua non* of effective consent, as it is axiomatic that "[w]here there is coercion, there cannot be consent." *United States v. Gonzalez*, 71 F.3d 819, 828 (11th Cir. 1996), quoting *Bumper v. North Carolina,* 391 U.S. 543, 550, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968); *see also Florida v. Bostick,* 501 U.S. 429, 438, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991) ("'Consent' that is the product of official intimidation ... is not consent at all.").

---

[4]*United States v. Gonzalez*, 71 F.3d 819, 827 (11th Cir. 1996) (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 748-49 (1984). *See also United States v. Holmes*, 270 Fed.Appx. 767 (11th Cir. 2008) at *1.

[5]*United States v. Acosta*, 363 F.3d 1141, 1151 (11th Cir. 2004).

[6]*United States v. Purcell*, 236 F.3d 1274, 1281 (11th Cir. 2001).

Police coercion can manifest through deceit or trickery.[7] In *United States v. Carter*, 884 F.2d 368 (8th Cir. 1989), the Eighth Circuit upheld suppression of a search and a statement, obtained through trickery. In that case, a bank employee was taken to the bank president's office, was questioned by two agents, and was told that they wished to search his wallet as part of an investigation into missing Canadian money. In fact, the agents were searching for "bait money" that they believed Carter had obtained by stealing mail from the bank mail room. 884 F.2d at 369. The district court found that the totality of the circumstances indicated that Carter's consent to the search of his wallet was not freely and voluntarily given, since "it occurred in a coercive atmosphere, no *Miranda* warnings were given, the inspectors made a misrepresentation to Carter to induce his consent, and Carter was not informed that he was not required to produce his wallet." 884 F.2d at 369. The Eighth Circuit upheld these findings.

In the present case, the agents similarly misrepresented the purpose of both their visit to Mr. McElroy's residence and their requests for information. The agents initially stated to Mr. McElroy and his fiancee Ms. Tatkenhorst that they were there to investigate the S.P. case.[8] When asked at the suppression hearing what the purpose was of interviewing Mr. McElroy on March 30, 2007, Agent Baker candidly acknowledged that it was "[t]o see if he

---

[7]*United States v. Trower*, No. 07-3434, 2008 WL 2778792, at *2 (8th Cir. July 18, 2008) (stating in *dicta*, "deceit or trickery can constitute evidence of coercion that may in a given case vitiate consent").

[8]Suppression Hr'g Tr., 180, lines 6 - 9.

would confess to actually having child pornography or utilizing the Internet to obtain child pornography."[9]

At the suppression hearing, Special Agent Keith Baker testified that "there was no independent information that came into the F.B.I's office that identified Mr. McElroy as a potential suspect in the S.P. case."[10] While investigating Mr. McElroy for child pornography in 2007, Agent Baker apparently noticed a general resemblance between Mr. McElroy's driver's license picture and a computer generated composite sketch of the suspect in the S.P. case from six years earlier.[11] There was no other information to support even a tenuous connection between Mr. McElroy and the S.P. investigation.

The fact that the agents were not in pursuit of the S.P. investigation at the time of their appearance in Mr. McElroy's home was fully supported by all agents' testimony at the suppression hearing. Special Agent Christopher LaCarter, who also participated in the interviews of Mr. McElroy and his girlfriend Ms. Tatkenhorst on March 30, 2007, testified that despite a thirty minute interview with Ms. Tatkenhorst, there was no mention of the S.P. investigation.[12] Special Agent Paul Miller who interviewed Mr. McElroy, referred to the

---

[9] Suppression Hr'g Tr., 39, lines 20-22, February 13, 2008.

[10] Suppression Hr'g Tr., 33, lines 8-11, February 13, 2008.

[11] Recommendation of the Magistrate Judge, *Facts* at 1, July 24, 2008. Notably, the facial mole which is identified in every description of the composite photo of the suspect in the S.P. case, see link at n. 5 above, is absent from Mr. McElroy.

[12] *See* Suppression Hr'g Tr., 89, lines 4-6, 106, lines 8-10, February 13, 2008

address on Mr. McElroy's license as a further connection to the S.P. case,[13] yet also testified that he never looked up S.P.'s address and had no knowledge of where Mr. McElroy's license address was in relation to S.P.'s address.[14] Agent Miller further testified that he never contacted any police officer who had interviewed residents of the location of the S.P. residence or abduction,[15] never obtained any of the other composite drawings of the suspect in the case,[16] never talked to anyone involved in the creation of the drawing,[17] and never mentioned S.P. in the report he prepared describing his interview with Mr. McElroy.[18] Nevertheless, Agent Miller began his interview of Mr. McElroy by stating that the purpose of the visit was the investigation of the S.P. case.[19]

This evidence establishes that the references to the S.P. case were a stratagem used to manipulate and obtain Mr. McElroy's cooperation. Precedent binding in the Eleventh Circuit holds that coercing a suspect into giving his consent by misrepresenting official purpose is unconstitutional:

> When a government agent presents himself to a private individual, and seeks

---

[13] Suppression Hr'g Tr., 147, lines 8-10, February 13, 2008

[14] Id, at 148, lines 6-9.

[15] Id, at 150, lines 5-7.

[16] Id, at 150, lines 12-13.

[17] Id, at 150, lines 17-19.

[18] Suppression Hr'g Tr., 154, lines 17-22, February 13, 2008.

[19] Id, at 180, lines 6-9.

> that individual's cooperation based on his status as a government agent, the individual should be able to rely on the agent's representations. We think it clearly improper for a government agent to gain access to records which would otherwise be unavailable to him by invoking the private individual's trust in his government, only to betray that trust.

*SEC v. ESM Gov't Sec., Inc.*, 645 F.2d 310, 316 (5th Cir. 1981); *United States v. Tweel*, 550 F.2d 297, 299 (5th Cir. 1977) ("It is a well established rule that a consent search is unreasonable under the Fourth Amendment if the consent was induced by the deceit, trickery or misrepresentation of the . . . agent.").[20] While examples of law enforcement agents' use of deceits in attempting to obtain consent have been treated on an individual basis by the courts, multiple courts agree that such deceit can make apparent consent involuntary:

> A ruse entry when the suspect is informed that the person seeking entry is a government agent but is misinformed as to the purpose for which the agent seeks entry cannot be justified by consent.[21]

Mr. McElroy was misinformed as to the purpose for which the agents were at his residence. He was told that he was being questioned about the notorious S.P. case, that occurred approximately six years before the interview. Mr. McElroy was anxious to cooperate in any way he could to assist in this high-profile matter and to ensure the agents that he had nothing to do with the crimes committed against S.P. Had Mr. McElroy known instead that the agents' primary purpose in coming to his residence was to investigate child

---

[20] *Bonner v. City of Pritchard,* 661 F.2d 1206, 1209 (11th Cir.1981) (Fifth Circuit decisions rendered prior to September 30, 1981 are binding precedent on this court).

[21] *United States v. Bosse*, 898 F.2d 113, 115 (9th Cir. 1990); *United States v. Phillips*, 497 F.2d 1131, 1135, n.4 (9th Cir. 1974) (Noting that "a ruse entry, by its very nature, runs contra to the concept of an intelligent consent or waiver").

pornography, he would have been unwilling to share information with the agents.

This police coercion weighs strongly in favor of finding that Mr. McElroy did not voluntarily consent to the police searches or interrogations. The Recommendation entered on Mr. McElroy's Motion to Suppress fails to apply the law correctly in Mr. McElroy's case. The Recommendation does not addresses this coercion, but references it only briefly in a footnote[22] and dismisses it without analysis. Further, the Recommendation only considers this issue in the context of the custodial interrogation section of the Recommendation[23] where it has little bearing. The issue is not considered at all in the Recommendation's analysis of voluntariness; yet this issue is crucial to the correct application of law.[24]

## II.     Notice of Right to Refuse Consent

The Supreme Court has specifically rejected the argument that consent to a search cannot be valid unless the defendant knew that he had a right to refuse the request, *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). However, the Eleventh Circuit has identified "the defendant's awareness of his right to refuse consent" as a significant factor in assessing all circumstances of an allegedly consensual citizen-police encounter.[25]

In the present case, no testimony at the suppression hearing established that any of the agents notified Mr. McElroy of his right to refuse consent to the agents' requests, demands

---

[22] Recommendation of the Magistrate Judge, *Discussion* at 6, n.1, July 24, 2008.

[23] *Id.*

[24] *Id.* at 9-10.

[25] *United States v. Purcell*, 236 F.3d 1274, 1281 (11th Cir. 2001).

or questions.

It is the government's burden to prove that the consent to search Mr. McElroy's computer was voluntary.[26] The government examined all five agents present for the interviews of Mr. McElroy and Ms. Tatkenhorst. Notably, it produced no testimony or evidence to even suggest that Mr. McElroy or Ms. Tatkenhorst were made aware of their right to refuse to consent to the search.

The Recommendation states that "the Court has before it no evidence concerning defendant's awareness of his right to refuse consent," and that therefore, "it cannot evaluate these indicators."[27] The government has the burden of proof in establishing voluntariness of Mr. McElroy's consent to the searches[28] and consent to interrogation. Proper voluntary consent analysis requires the Court to consider the absence of evidence that Mr. McElroy was ever advised of the right to refuse consent or cooperation, and the impact this had on the voluntariness of his consent.

The Court relies on Mr. McElroy's cooperation with the agents as evidence that his consent to search his computer on March 30, 2007, was indeed voluntary.[29] While cooperation with law enforcement is one factor that should be considered in the consent analysis, *United States v. Purcell*, 236 F.3d 1274, 1281 (11th Cir. 2001), Mr. McElroy's

---

[26] *United States v. Acosta*, 363 F.3d 1141, 1151 (11th Cir. 2004).

[27] Recommendation of the Magistrate Judge, *Discussion* at 10, July 24, 2008.

[28] *United States v. Gonzalez*, 71 F.3d 819, 828, 831 (11th Cir. 1996).

[29] Recommendation of the Magistrate Judge, *Discussion* at 10, July 24, 2008.

cooperation was secured through coercion. As has been discussed above, the agents misrepresented their purpose for interviewing Mr. McElroy. They used a high-profile, inflammatory case, to which Mr. McElroy was extremely tenuously connected (and arguably not connected at all), in order to gain his cooperation. Cooperation gained in this manner can hardly be relied upon as the sole factor illustrating Mr. McElroy's voluntary consent.

### III. Awareness of Incriminating Evidence

The final legal factor the Recommendation lists in its voluntariness analysis is "the defendant's belief that no incriminating evidence will be found."[30] The Court then concedes that Mr. McElroy was aware that incriminating evidence would be found on his computer.[31] This is supported by Special Agent Miller's testimony that Mr. McElroy admitted to him that he had child pornography on his computer.[32] Mr. McElroy's belief that incriminating evidence would be found on his computer supports a finding that the consent he gave was not voluntary.

As noted by other courts, a defendant's awareness that incriminating evidence would be found normally raises suspicion that permission to look for that evidence was not given voluntarily. *See United States v. Phillips*, 664 F.2d 971, 1023 (5th Cir. 1981), *superseded* on separate issue by Federal Rule of Criminal Procedure 23 as stated in *United States v.*

---

[30] Recommendation of the Magistrate Judge, *Discussion* at 9, July 24, 2008.

[31] Recommendation of the Magistrate Judge, *Discussion* at 10, July 24, 2008.

[32] Suppression Hr'g Tr., 156 lines 11-12, February 13, 2008.

*Huntress*, 956 F.2d 1309 (5th Cir. 1982); *United States v. Yeagin*, 927 F.2d 798, 800 (5th Cir. 1991); *United States v. Williams*, 2008 WL 1712291 (W.D. La. 2008) at *7. The fact that Mr. McElroy gave apparent consent despite his knowledge that incriminating evidence was on his computer reinforces the coercive impact of the S.P. story.

Because Mr. McElroy's consent was involuntary, the information and evidence obtained with this "consent" was obtained illegally.[33] The United States Supreme Court has held that one co-occupant's consent does not save an otherwise unlawful search, if the other co-occupant is present and refuses consent: "We hold that . . . a physically present co-occupant's stated refusal to permit entry prevails, rendering the warrantless search unreasonable and invalid as to him."[34] Therefore, even if Ms. Tatkenhorst's consent was voluntary (which the defendant does not concede), the search would still be unlawful because of Mr. McElroy's lack of voluntary consent to that search.

**IV. Scope of Consent**

The Recommendation fails to address Mr. McElroy's argument that the search of the computers exceeded the consent given. Even if Mr. McElroy consented to said searches, he did not consent to the use of police software and scandisk, to simultaneously analyze the entire computer.

A consensual search may not exceed the scope of the consent given. *United States*

---

[33]*See Acosta*, 363 F.3d at 1151.

[34]*Georgia v. Randolph*, 547 U.S. 103, 106 (2006).

*v. Turner*, 169 F.3d 84 (1st Cir. 1999). The standard for measuring the scope of a suspect's consent is one of objective reasonableness, and is determined by the terms of the actual consent. *United States v. Harris*, 928 F.2d 1113 (11th Cir. 1991); *United States v. Martinez*, 949 F.2d 1117 (11th Cir. 1992). In *United States v. Strickland*, 902 F.2d 937 (11th Cir. 1990), consent was given to a search of a car, trunk and luggage. However, the Eleventh Circuit held even this broad consent did not include permission to slash a tire and examine its contents.

In the present case, even with an explanation by the FBI agents of some of their software, Mr. McElroy had no reason to believe he was consenting to any procedure broader than a visual observation of his computer. Instead, the officers used software to analyze the computers and attempted to copy the contents onto a thumb drive.

**V. Conclusion**

The Recommendation erred in finding that Mr. McElroy voluntarily consented to the search of his computer on March 30, 2007 and to related questioning. Mr. McElroy objects to the incorrect application of law in the Magistrate's Recommendation. The correct application of the voluntariness factors highlighted by the 11th Circuit to Mr. McElroy's case shows that the consent given by Mr. McElroy was not voluntary. Therefore, the Defendant's Motion to Suppress should be granted and all evidence and statements obtained as a result or as fruits of these police encounters should be suppressed.

**WHEREFORE**, defendant respectfully requests that the Recommendation be rejected

and his Motion to Suppress be granted.

Respectfully submitted,

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Norman McElroy
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL: (334) 834-2099
FAX: (334) 834-0353
E-Mail: Christine_Freeman@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Christopher Snyder, Esq., Assistant United States Attorney, One Court Square, Montgomery, AL 36104.

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Norman McElroy
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL: (334) 834-2099
FAX: (334) 834-0353

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| V. | )   CASE NO: 2:07-cr-104-WKW-SRW |
| | ) |
| NORMAN EVANS MCELROY, JR. | ) |

## DECLARATION OF MELANIE OSBORN

I, Melanie Osborn, being duly sworn, do hereby state the following of my own knowledge and under penalty of perjury:

1. I live at 143 Thames Drive, Prattville, Alabama 36066. I am a former girlfriend of Norman Evans McElroy, Jr. We have never resided together, and I have not had contact with Mr. McElroy in over one (1) year.

2. On or about March 29, 2007, two (2) FBI agents came to my home and asked me questions about my computer and use of the internet. In particular, they wanted to know if I had a wireless router.

3. The agents informed me that during an FBI investigation it had been determined that child pornography was accessed by someone using my IP address. I allowed them to search my computer.

4. During the search of my computer, the agents located some images of child pornography on my computer. After finding this, the agents requested my consent to take my computer and do further scanning on it. I agreed, and to date the agents still have my computer.

5. During the discussions about my computer, the agents asked me whether I knew

Norman Evans McElroy, Jr. I informed them that I did know Mr. McElroy and that we had dated for a period of time. In addition, they asked me if he had ever had access to my computer and I told them that when we were dating he had used my computer at various times.

6. Towards the end of the interview, the agents also showed me a composite drawing and asked me if that looked like Mr. McElroy. I stated that the composite did not resemble Mr. McElroy at all.

7. The agents did not have this composite drawing when they came to my home. They had someone bring the composite to my home. As one of the agents stepped outside to meet the person or persons bringing the composite, I do not know who brought the composite to my home.

I hereby declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

DATE: 2-15-08            Signature: _____

Subscribed to and sworn before me, a Notary Public in the State of Alabama,

County of: Montgomery

Signature: Rosetta W. Griggs

Date my commission expires: 12-18-11